## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TURKCELL İLETIŞIM HIZMETLERI A.Ş. and EAST ASIAN CONSORTIUM B.V.** | |
| Plaintiffs, | |
| vs. | Civil Action No.: 12-cv-00479 (RBW) |
| **MTN GROUP, LTD. and MTN INTERNATIONAL (MAURITIUS) LTD.** | |
| Defendants. | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY THIS COURT SHOULD NOT COMPEL TURKCELL TO CONSENT AND FOR AN ORDER TO EXPEDITE

Plaintiffs, Turkcell İletişim Hizmetleri A.Ş. and East Asian Consortium B.V. (together, "Turkcell"), respectfully Oppose the Motion for an Order to Show Cause filed by Defendants, MTN Group, Ltd. and MTN International (Mauritius) Ltd. (together, "MTN"), for three reasons. First, and consistent with its fraud and obfuscation in Iran, MTN misrepresents to this Court the underlying facts and circumstances at issue here. Second, MTN's Motion is a procedurally improper discovery request – the very discovery it vehemently opposed just two weeks ago – and in direct disregard of this Court's rules. Third, and even if MTN had complied with the Rules of Civil Procedure and this Honorable Court's General Order and Guidelines for Civil Cases ("Standing Order"), MTN's Motion must fail because there could be no *res judicata* or collateral estoppel effect at the Motion to Dismiss stage of this case from an arbitration involving different claims by different parties in a different forum applying different law with different facts.

For these reasons, as well as the other reasons set out below, Turkcell respectfully requests this Honorable Court deny the Motion and impose appropriate costs, including reasonable attorneys' fees, against MTN pursuant to its discretionary authority and this Court's Standing Order, Section 8 concerning proper resolution of discovery disputes.

## INTRODUCTION

This case involves allegations that following the February 2004 international competition award to Turkcell by Iran of the country's first private Iranian Global System for Mobile Communications ("GSM") license (the "License"), Compl. ¶¶ 55-61, MTN by bribery, corruption, and deceit stole the valuable license from Turkcell.  *Id., e.g.*, ¶¶ 2, 76; Deposition of Christian Kilowan (April 30, 2012 – May 1, 2012) ("Kilowan Dep.") at 33:9-35:22, 58:6-12, 60:14-61:10.[1]   The allegations, now proven by testimony from <u>MTN's</u> Iran Office Director, Chris Kilowan, are that in exchange for receiving the GSM license, MTN:

- In 2004 promised to deliver the South African government to support a vote in Iran's favor at the U.N. International Atomic Energy Agency, which it did three times between 2005 and 2006; Compl. ¶¶ 133-154; Kilowan Dep. at 88:22-89:14, 114:4-115:21, 291:11-294:4, 298:5-299:12, 458:5-459:11;

- In 2004 promised to deliver South Africa's Defense Minister, and thereafter to facilitate the sale of arms, from South Africa to Iran, which it did; Compl. ¶¶ 88-107; Kilowan Dep. at 87:4-88:21, 90:20-95:3, 101:14-111:10, 119:17-121:7, 122:4-123:20, 135:3-136:14, 149:3-154:19, 449:8-21, 459:13-460:16;

- In 2005 promised a bribe ($400,000 USD) to the Iranian Deputy Minister of Foreign Affairs, Jarvid Ghorbanoghli, which it paid in 2007; Compl. ¶¶ 109-117, 165-173; Kilowan Dep. at 165:6-170:6, 353:17-362:21, 367:1-12, 460:18-461:7, 462:7-11;

- In 2005 promised a bribe ($200,000, paid in South African Rand) to the South African Ambassador to Iran, Yusuf Saloojee, which it paid in 2007; Compl. ¶¶ 118-121, 174-181; Kilowan Dep. at 201:3-203:2, 387:7-390:10, 393:1-394:4, 462:13-463:4; and

---

[1] All excerpts from the Kilowan deposition are attached as Exhibit A.  Relevant errata are also included.

- In 2005 promised to pay, through sham loans, the entire costs of their Iranian partner's costs of the project, totaling over €225 million Euros; Compl. ¶¶ 122-132, 156-165; Kilowan Dep. at 96:20.

During his testimony, Kilowan also revealed for the first time MTN bribes to at least six other Iranian officials. Kilowan Dep. at 420:19-427:9, 461:8-19. Kilowan also confirmed the Complaint's allegations that but for MTN's bribery, corruption, and deceit, MTN would not have stolen the license from Turkcell, who had lawfully won the license through the international "tender" (competition) process. Compl., *e.g.* ¶ 197; *e.g.*, Kilowan Dep. at 464:4-8.

MTN's Motion misleads the Court by claiming that the case is about "[w]hether Turkcell should be compensated for failing to secure a place in an Iranian cell phone venture . . .", Memorandum of Points and Authorities ("Mem.") at 2. The Complaint, and MTN's own former Iran Director, make clear, however, that Turkcell secured the winning place – it was only MTN's corruption and bribery that resulted in Turkcell's subsequent loss of that opportunity. MTN's Motion is misleading because MTN cannot acknowledge what is now evidence of record – that in violation of norms of international law it manipulated the legal award to Turkcell and caused Turkcell to be displaced as the licensee.

MTN's Motion is a diversionary tactic; it suggests that one of two arbitrations that Turkcell has brought in Europe (one against its former partners under a breach of contract claim, which was recently decided, and the other against the Iranian government which has yet to be heard) somehow raises issues of *res judicata* or collateral estoppel that might be relevant at the present Motion to Dismiss stage. While those proceedings are confidential and Turkcell cannot comment publicly about them, Turkcell can address what is *not* in those cases – MTN is not a defendant (or, for that matter a "privy") in either arbitration (thus completely eliminating MTN's spurious *res judicata* claim). And the International Court of Arbitration of the International

Chamber of Commerce ("ICC") arbitration between East Asian Consortium and the Iran Electronic Development Company ("IEDC"), Case No. 15597/JEM/GZ ("the ICC Arbitration"), was heard before the evidence about MTN's malfeasance was known or could have been known by Turkcell, much less before it was litigated before any tribunal.  Thus, MTN's diversionary attempt fails.

Having actively resisted all discovery to date, MTN cannot now guise a plain discovery motion to compel as a "Motion for an Order to Show Cause."  Indeed, MTN's actions are a direct violation of the Court's May 14, 2012 Order.  Dkt. No. 13.  Further, knowing that the ICC Arbitration award is confidential, and having itself apparently agreed to keep confidential the copy of the award which it questionably obtained, MTN should not be allowed to put it into the record.

Most important, however, is that the arbitrations have nothing to do with this case – and certainly are irrelevant at this preliminary stage where the Court, in reviewing the expected Motion to Dismiss, must assume the allegations of the Complaint to be true.  Respectfully, MTN's Motion must be denied.

## PROCEDURAL HISTORY

On April 16, 2012, MTN served Turkcell with a Rule 34 document request seeking, among other things, all documents relating to the ICC Arbitration.  Harkness Ex. A, Request No. 4.  On April 24, 2012, Turkcell objected to this Request in its response to MTN because "it seeks information in proceedings that are governed by laws and/or agreements protecting the confidentiality of the Arbitration proceedings."  Harkness Ex. B at 4.  Following that date, MTN insisted – and the Court on May 14, 2012, ordered – that all discovery be stayed absent exigent

circumstances pending a decision on MTN's Motion to Dismiss or a Rule 26(f) conference, neither of which have occurred.  Dkt. No. 13.

Notwithstanding its insistence that no further documents be exchanged in the case prior to resolution of the anticipated MTN Motion to Dismiss, just days ago, on May 22, 2012, MTN inexplicably renewed its discovery request to Turkcell, despite the Order MTN itself requested staying discovery.  Turkcell offered to allow MTN to file its motion to dismiss under seal to allow MTN to provide the Court with whatever materials it believes are necessary for its motion to dismiss.[2]  Thus, any averment, whether intentional or not, by MTN that Turkcell is attempting to hide information from this Honorable Court, tainting the integrity of the proceedings, or otherwise failing a duty of candor (Mem. at 9), is completely disingenuous.  Turkcell has provided MTN with a platform to disclose the ICC Arbitration materials – at its own risk.[3]

Knowing its motion is nothing more than a belated discovery request, and to avoid the Court's Standing Order governing discovery motions and the standard response times for discovery motions, MTN has couched this motion as an emergency Motion for an Order to Show Cause.  It neither cites authority for this form of request nor does it explain why it waited until the Friday before a holiday weekend to file it.  Its request is, therefore, improper and not reviewable.

---

[2] Turkcell, however, could not and will not agree that use of the ICC Arbitration award even under seal would not violate (1) MTN's obligations under its confidentiality agreement with IEDC or (2) the confidentiality provision governing the ICC Arbitration.  Harkness Ex. I (Email from R. McCaffrey at 8:09 AM: "[W]e make no representations or agreements on the confidentiality issue."; Email from R. McCaffrey at 9:46 AM: "I have not agreed that Turkcell would not raise the issue of confidentiality and cannot as we do not know what lies ahead regarding how you intend to use or refer to the Award.  I did, very clearly, state that we would not oppose a motion to file your motion under seal which may resolve the confidentiality conundrum – but that remains to be seen.").

[3] MTN's request is not simply a matter of securing a "yes" or "no" answer from Turkcell.  Rather, MTN's request demands that Turkcell analyze the ICC confidentiality provisions, consult with counsel to the arbitration, and determine the proper procedure for release of materials, including whether the arbitral Tribunal must approve the release of materials, especially on the public record.  Now is not the time for such efforts, and Turkcell respectfully submits that MTN is using this Motion for an Order to Show Cause as an improper vehicle to delay its motion to dismiss and impose burdensome litigation on Turkcell.

### BACKGROUND ON THE ARBITRATIONS

MTN misrepresents to this Honorable Court the context in which it is seeking to discover documents regarding the ICC Arbitration. In fact, Turkcell filed two arbitration actions against Iranian parties relating to the issue of the first private Iranian GSM License. One is the ICC Arbitration – with the award at issue here – filed against IEDC (Noury Ex. B, Dkt. No. 17-3 at 232), Turkcell's former local partners in Iran who had entered into a partnership agreement for the License, which we know today that MTN stole. The other is an arbitration under the Turkey-Iran Bilateral Investment Treaty ("BIT") against the Republic of Iran. Noury Ex. C., Dkt. No. 17-4 at 195. At the time Turkcell filed those arbitrations, it was unaware of the evidence that came to light providing it with a basis for making a legal claim against MTN in the present action. The ICC Arbitration was a contract claim against IEDC as a former business partner; Turkcell never filed any actions against MTN relating to the IEDC contract, nor could it as MTN was never a party to any contracts with Turkcell. Further, the award in the ICC Arbitration has not yet been served pursuant to Article 1519 of the French Code of Civil Procedure, and therefore the time for filing an annulment action has not begun to run – restated, it is not even final. The BIT arbitration, which is still ongoing, alleges that Iran violated its BIT with Turkey by acting in a manner that Turkcell now knows was the result of Iran's agreeing to the charade concocted by MTN.

The evidence of corruption and bribery forming the backbone of this case did not come to light until October 2011 – after the ICC hearing had been concluded. *See* Declaration of David Farber ("Farber Decl.") ¶¶ 2-3. The issues of corruption and bribery were never litigated before

any court or tribunal, nor could they as the ICC proceedings had concluded before evidence of corruption and bribery was known.[4]

Further, and aside from the fact that the evidence in this case was never before the ICC tribunal because it was not known to Turkcell at the time, MTN concedes that the ICC Arbitration is governed by a confidentiality order.[5]   MTN assumes a simple consent is all that is needed to comply with this order, but nowhere in its Motion does it actually describe that order. To Turkcell's understanding, that is simply incorrect.[6]   The confidentiality order, Procedural Order No. 1, Section 3.2, is itself confidential as part of the arbitration proceeding.   It is the opinion however of undersigned counsel that MTN's averment that only Turkcell's consent to disclosure is required is not an accurate interpretation of the aforementioned confidentiality order.  However, insofar as (1) consent should not be compelled at this time, (2) MTN is free to file under seal at its own risk, and (3) neither of the announced arguments of MTN in wanting to refer to the award, collateral estoppel and *res judicata*, are procedurally viable at this stage (as is explained below), the consent argument is moot.

Turkcell disputes many of the other facts concerning the underlying sequence of events and background of MTN's takeover of the License as asserted by MTN in its motion.  Indeed,

---

[4] In contrast, although the period to introduce evidence was closed in the BIT arbitration and the merits hearing was scheduled for the coming months, Turkcell asked the panel to accept the new evidence out of time and the BIT Panel has recently agreed to do so.

[5] MTN suggests that it was receiving information about the ICC case as an indemnitor to IEDC, but even a superficial review of the purported indemnity agreement reveals in contains no confidentiality clause.  *See* Noury Ex. A.  This begs the question of whether MTN's recent "confidentiality agreement" (which, although material to its Motion, it fails to provide to the Court or Turkcell), Noury Decl. ¶ 8, referencing an "undertaking" to release the ICC Arbitration documents (citing no exhibit or reference), was entered into in bad faith – in other words MTN entered into the agreement knowing that it would immediately attempt to violate it by disclosure in this case.

[6] Since discovery has not yet started in this action, Turkcell suggested to MTN that if MTN insisted information from the ICC Arbitration was necessary for its Motion to Dismiss, then it file its motion to dismiss under seal.  Filing under seal would be MTN's responsibility alone; Turkcell does not wish, nor should it be compelled, to expose itself to liability for potentially violating the ICC Arbitration's confidentiality order.  MTN refuses to take such action, however, and insisted on bringing this improper Motion.

MTN's factual summary has largely ignored the recently concluded eye-witness deposition and documents produced therein.  To conserve this Court's valuable resources, however, Turkcell will not respond to individual misstatements of facts at this time.  Turkcell reserves the right to challenge any statement of fact presented by MTN at a later, more appropriate juncture.  It is questionable, though, how MTN believes its possession of ICC Arbitration materials is "legitimate" or "proper."  Mem. at 5, 8.  MTN is not a party or privy to the ICC Arbitration, and Turkcell has never provided consent for its receipt of the materials.[7]

**ARGUMENT**

**1.    MTN's "Motion" Is Improper and Not Reviewable**

MTN cites no authority for its Motion for an Order to Show Cause because there is none.[8]  MTN has failed to carry its obligation to ensure the Motion is properly before the Court and has not stated its grounds for seeking the Show Cause Order as opposed to a standard Motion to Compel.  FED. R. CIV. P. 7(b)(1)(B).

A Show Cause Order would be improper at this stage.  No present order is in place requiring Turkcell to engage in discovery or provide documents, including consent to access and use documents, to MTN.  MTN, at the very least, is confused – and to the extent it has failed to explain exactly what it hopes to accomplish (a Motion for an Order to Show Cause or a Motion to Compel), the best resolution is to deny the Motion and send MTN back to the drawing board.

---

[7] Turkcell also challenges MTN's assertion that it has ever violated the confidentiality order governing the ICC Arbitration by revealing testimony to a potential witness in the case.  Mem. at 4.  Contrary to MTN's statement in its motion, Mr. Kilowan testified that he was shown only one document from the ICC Arbitration, which was the testimony of Dr. Farzad, an individual with whom Mr. Kilowan had interacted while forming MTN-Irancell, and related to events of which Mr. Kilowan had direct knowledge and thus were not confidential.  Harkness Ex. F, Kilowan Dep. at 949:20-950:2.

[8] Given that there is no basis for the Motion itself, it is not surprising that the relief sought by MTN is also inconsistent.  MTN's "motion" repeatedly requests relief in the form of compelling Turkcell to consent to the use of the ICC Arbitration award in these proceedings.  Yet, the Motion itself and the ultimate relief requested in the Memorandum of Law state that MTN is seeking a Show Cause Order.

2.      **MTN's Request for Consent Is Nothing More than a Discovery Request**

MTN's "Motion" for an Order to Show Cause – most generously read – is nothing more

than an improper, premature discovery request or Motion to Compel.  Every case MTN cites in

support of its request to compel Turkcell's consent is a <u>discovery case</u>.  This is because a request

for consent to receipt and use of a document is identical to a discovery request seeking

production of that document.

"[A] request for production need not be confined to documents or other items in a party's

possession, but instead may properly extend to items that are in that party's 'control.'"  *Flagg v.*

*City of Detroit*, 252 F.R.D. 346, 353 (E.D.MI 2008), *citing* FED. R. CIV. P. 34(a)(1) and *Cooper*

*Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) ("Documents

need not be in the possession of a party to be discoverable, they need only to be in its custody or

control.").  "[D]ocuments are deemed to be within the 'control' of a party if it has the legal right

to obtain the documents on demand." *Id*. (internal quotation and citations omitted); *see also U.S.*

*Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (noting "control" means

"the legal right, authority or ability to obtain documents upon demand.").

*Flagg*, a case relied heavily upon by MTN, was a <u>discovery</u> dispute over whether a party

was required to grant consent to release of materials held by a third party.  The court analyzed

the entire issue under FED. R. CIV. P. 26(b)(1), asking whether one of the defendants was

"seek[ing] to prevent this <u>discovery effort</u> from going forward." 252 F.R.D. at 347 (emphasis

added).   The court held that consent to access documents on a third party server was

discoverable, noting that the information sought was "plainly . . . subject to civil discovery." *Id*.

Of course, during discovery, "a party may request the production of documents and various other

categories of items that are 'in the responding party's possession, custody, or control." *Id*. at

354, *citing* FED. R. CIV. P. 34(a)(1).  MTN's analysis might be correct in the discovery context; it is wholly improper outside the scope of discovery.  Indeed, MTN cannot rely upon or use documents outside the pleadings such as that at issue here – to do so would undermine the entire premise of making a determination on the sufficiency and plausibility of the pleadings.

MTN also relies heavily on *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664 (7th Cir. 2009) – another discovery case.  The court in *Gotham Holdings* analyzed a subpoena request by a third party for arbitration materials subject to a confidentiality provision.  "Because the discovery deadline . . . is approaching, and the documents covered by the subpoena may lead to additional discovery request . . ., we granted Gotham Holdings' request . . . ."  *Id*. at 665 (emphasis added).  Importantly, the party issuing the subpoena (a third party to the arbitrations) in *Gotham Holdings* had a legal right during the discovery period to subpoena the materials.  580 F.3d at 665-666 ("The parties promised to keep their mouths (and files) shut unless a subpoena required a turnover.").  MTN, on the other hand, has no authority to demand Turkcell's release into the (public) record of materials at this pre-discovery stage of the litigation.

There is little question that MTN knew this to be a discovery request when it attempted to request discovery on this precise issue in late April and early May.  *See* Mem. at 4; Harkness Exs. A & B (MTN's discovery requests and Turkcell's responses); Harkness Exs. C, D, & E (correspondence in late April and early May regarding MTN's discovery request to obtain information regarding the ICC Arbitrations).

Further evidencing that MTN's request is indeed a discovery request, MTN is not requesting this Court to simply recognize a public pleading in another case.  Nor is MTN seeking to obtain and introduce information about an action in which MTN was a party.  Rather, MTN, as a non-party to the ICC Arbitration, is simply pressing for immediate and selective discovery in

violation of the Court's Order of May 14, 2012, staying discovery until after the motion to dismiss. Dkt. No. 13. That is patently improper.

MTN, knowing that it is trying an end-run around Rule 26 and this Court's standing Order, tries to avoid the inevitable by simply claiming that this is "not a discovery dispute." Mem. at 8. Simply stating it cannot make it so. Turkcell is under no obligation to provide documents or consent to access and use documents to MTN prior to the start of discovery. MTN's request that Turkcell consent to release ICC Arbitration materials is thus improper, in violation of the Court's Order staying discovery, and completely unnecessary for the Motion to Dismiss.

### 3.    Discovery Requests Are Inappropriate at the Motion to Dismiss Phase

The motion to dismiss stage is not an appropriate stage for seeking discovery – or obtaining an Order to Show Cause. Nor (with certain exceptions not relevant here) are outside documents allowable for the determination of a motion to dismiss. A motion to dismiss determines whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 127 S.Ct. 1950.

MTN has not explained why it should be exempt from this standard, except to generally state that the conclusion might be relevant and dispositive – conclusions to which Turkcell vigorously disagrees. *See, e.g.*, Mem. at 3-4 ("Freshfields believes that the Award forms the basis of a *potentially dispositive issue* in this case.").

In that sense, MTN is putting the cart before the horse in seeking a full factual analysis at the motion to dismiss stage. MTN may not argue factual merits; the Court must make the standard inferential determination on the motion to dismiss. Discovery is not typically entered into prior to a motion to dismiss except in exigent or extraordinary circumstances (such as presented by the Kilowan deposition to preserve evidence that the Court permitted). Simply stated, the question of whether the ICC decision, once final, can ever come into these proceedings may be a question for another day. It is not, however, a question for now given the litigation direction MTN has chosen.

### 4.    Res Judicata and Estoppel Arguments Are Inappropriate at the Motion to Dismiss Phase

MTN also argues the ICC Arbitration award is needed for collateral estoppel and *res judicata* arguments it intends to raise in the motion to dismiss. Mem. at 2. However, these affirmative defenses are not timely until the responsive pleading stage; they are not appropriate for a motion to dismiss. FED. R. CIV. P. 8(c); *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982) ("*Res judicata*, however, is not a defense under 12(b); it is an affirmative defense that should be raised under Rule 8(c)."); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, C. Wright & A. Miller, Federal Practice and Procedure, § 1277, at 328-30, but this is not true when, as here, the defense raises no disputed issues of fact. *Id*. at 332."), *also citing Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (per curiam). Defenses which may be raised by motion under Rule 12(b) do not include these two affirmative defenses and may only be raised in a motion to dismiss when preclusive effect can be "determined from the face of the complaint." *Concordia*, 693 F.2d at 1075. Other affirmative defenses may be proven at a later stage in the litigation after appropriate discovery by the parties. *Stoddard v. Morrin*, 8 F.R.D. 375, 376 (D.D.C. 1942).

This District dissected this issue years ago, finding that a *res judicata* determination is inappropriate on a motion to dismiss unless the complaint makes the case for *res judicata* on its face:

> Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A., provides that six classes of defenses may be made by motion. . . . Some courts have held that although nothing may appear on the face of the complaint which shows that the cause of action is barred by *res judicata*, that fact may be shown by affidavit and upon that being done a motion to dismiss will lie. I do not agree with this view. A complaint may state a claim upon which relief can be granted. If it does not a motion to dismiss will lie. To hold otherwise would permit any defense to be raised by affidavit as a basis for a motion. I do think that if a complaint shows on its face that the cause of action is barred by laches or the statute of limitations a motion to dismiss will lie, and this is in accordance with the practice under the old equity rules, but the present rules in my opinion require that the defense of *res judicata* should be raised 'in the responsive pleading.'

*Stoddard*, 8 F.R.D. at 376.; *see also* 5 WRIGHT & MILLER, FED. PRACT. & PROC. § 1277 (3d Ed. Supp. April 2012) ("The rule against raising defenses by motion is based on the view that motions to dismiss or to strike cannot be used to resolve disputed fact questions, and that courts should avoid "little trials" on the pleadings because under federal practice the pleadings are designed merely to provide notice of the respective claims and defenses of the adversaries."). Similarly, the Eight Circuit has held that Rule 8(c) requires that the "defendant must answer the complaint before [estoppel] can be heard . . . ." *Cohen v. United States*, 129 F.2d 733, 737 (8th Cir. 1942). Indeed, "most defensive matters cannot be the basis for a motion to dismiss the plaintiff's complaint." 5 WRIGHT & MILLER § 1277, *citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002) (emphasizing the simplified pleading standard for a complaint).

Thus, it is generally improper for a party to base a motion to dismiss on a *res judicata* or collateral estoppel argument unless the preclusive facts are apparent from the face of the complaint. In this case, the facts MTN is alleging are decisive did not even emerge until *after*

Turkcell's filing of the Complaint, when the ICC tribunal issued its award on April 17, 2012. Mem. at 3.  Turkcell will show why those facts are not dispositive at the appropriate stage of litigation.

### 5.    Res Judicata and Collateral Estoppel Are Outside the Scope of MTN's Motion to Dismiss

In addition to being procedurally inappropriate in a motion to dismiss, the facts of this case overcome even basic defenses of *res judicata* and collateral estoppel.  There could be no *res judicata* or collateral estoppel effect from an arbitration involving different claims by different parties in a different forum applying different law at the motion to dismiss stage of these proceedings, which is where this case is currently situated.  Without divulging the details of either arbitration, it is apparent that *res judicata* and collateral estoppel would not apply to MTN's Motion to Dismiss.

### A.    Different Parties:  MTN Is Not a "Privy" of IEDC

MTN is completely distinct from its Iranian partners.  *Res judicata* and collateral estoppel, in the context of arbitration awards, require that the arbitration involved the same parties or their privies as the parties to the litigation at issue.  In the District of Columbia, a privy with respect to *res judicata* is "one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case."  *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999) (citation omitted); *cited by Smith v. District of Columbia*, 629 F.Supp.2d 53, 58 (D.D.C. 2009).  "A privy includes those who control an action although not parties to it . . . and those whose interests are represented by a party to the action."  *Id.* (internal quotation and citation omitted).  In addition, co-conspirators (which Turkcell alleges is the relationship between MTN and IEDC, if anything), are <u>not</u> privies for purposes of *res judicata*.  *Novak v. World Bank*, 703 F.2d 1305, 1309 n.11 (D.C. Cir. 1983).

MTN asserts <u>without citation</u> that it is a "privy" of IEDC.  *E.g.*, Motion for Order to Show Cause at 2; Mem. at 1.  Precedent for this position is clearly lacking.  MTN has provided no evidence that it had any control or influence over the ICC Arbitration, for indeed it had none. MTN's interests were not represented by IEDC in the ICC Arbitration.  MTN currently has a contractual relationship with IEDC, *see, e.g.*, Compl. ¶ 131, but Turkcell's allegations against MTN do not rely on this contractual relationship.

### B.     Different Claims: Turkcell's Claims Are Unique to This Litigation

Turkcell's action against MTN is for harm MTN caused to Turkcell for violation of the law of nations through bribery of sitting Iranian and South African officials and trading in influence to steal the License from Turkcell.  Turkcell's causes of action in this case are entirely unique to this forum, and certainly distinct from any contractual causes of action asserted against the Iranian government in the BIT Arbitration and the Iranian partners in the ICC Arbitration. This is <u>not</u> a contract case, and as such, it could not have by its very nature been the subject of an ICC arbitration.

Without similar claims having been brought in a prior proceeding, *res judicata* cannot apply to this action.   *Res judicata*, also known as "claim preclusion," bars "a second suit involving the same parties or their privies based on the same cause of action." *Taylor v. Blakey*, 490 F.3d 965, 969 (D.C. Cir. 2007), *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645 (1979).  Certainly any "breach of contract" claims forming the basis of an ICC arbitration against IEDC could not be even remotely similar to the Alien Tort Statute and tortious interference-type claims Turkcell now makes against MTN.  MTN has proffered no evidence to the contrary.

The same is true for issue preclusion, or collateral estoppel.  Again, the issues relating to MTN's bribery, corruption, and conspiracy to "snooker" Turkcell out of its rightfully won

License in Iran are presented for the first time in this litigation.  Collateral estoppel only applies "once a court of competent jurisdiction actually and necessarily determines an issue . . . ." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007); *see also Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("The Supreme Court has defined issue preclusion to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").  The issues of MTN's bribery and corruption have never been addressed by any tribunal, thus collateral estoppel is no defense.

### C.    Different Facts: New Evidence Shows MTN's Unlawful Bribery and Trading in Political Influence Caused Turkcell's Harm

Only late last year did Turkcell learn of MTN's massive scheme to undermine its ability to receive the License.  This evidence was not available to Turkcell during the ICC Arbitration (Farber Decl. ¶¶ 2-4), so Turkcell was not able to present facts relating to MTN's actions to show that MTN promised Iran that MTN could deliver South Africa's vote at the International Atomic Energy Agency; that MTN promised Iran defense equipment otherwise prohibited by national and international laws; and that MTN bribed high-level government officials in both Iran and South Africa.  These acts form the basis of Turkcell's complaint against MTN, showing that MTN successfully frustrated Turkcell's ability to close on the License that Turkcell had legitimately won through an international tender process.  MTN's actions deliberately resulted in Turkcell losing its rightfully-won valuable telecommunications opportunity and in MTN's taking over the License, causing substantial direct harm to Turkcell.

The newly revealed evidence shows that MTN was the driver behind the constantly moving regulatory goalposts for Turkcell to receive the License and the motivation – through bribes and other unlawful acts – for IEDC to abandon Turkcell in favor of MTN.  As a basic

matter of timing, this litigation is the first time Turkcell has been aware of and able to present these facts.   Farber Decl. ¶¶ 2-5.   As such, collateral estoppel and *res judicata* cannot apply in this case.   Collateral estoppel only applies where "the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue in the earlier case." *Bryson v. Gere*, 268 F.Supp.2d 46, 57 (D.D.C. 2003).   This being the first time Turkcell has ever had an opportunity to raise issues of bribery and corrupt political influence, collateral estoppel should not apply.   Similarly, *res judicata* only applies where prior claims *could* have been raised, not where circumstances, such as new discovery of information, have prevented the party "against whom the earlier decision is asserted [from] a full and fair opportunity to litigate the claim or issue." *Wise v. Glickman*, 257 F.Supp.2d 123, 128 (D.D.C. 2003).   Any reliance MTN places on *res judicata* or collateral estoppel is misplaced and should be disregarded.

C<span style="font-variant:small-caps">ONCLUSION</span>

MTN's Motion for an Order to Show Cause as to Why this Court Should Not Compel Turkcell to Consent and for an Order to Expedite is simply an improper discovery motion and the result of a self-inflicted Catch-22 dilemma.   MTN, on several occasions, vigorously urged this Honorable Court to forbid any pre-Rule 26(f) conference discovery.   In fact, MTN's counsel specifically refers to their request for the Award at issue as a discovery request (May 1 e-mail). Three weeks later, on May 22, defense counsel, concluding that it wanted to use the Award but unable to request it through discovery, attempted to create a procedural mechanism – the instant Motion – unsupported by Rule or case law, to unsuccessfully disguise what is clearly a request for an order compelling discovery.

The ICC Arbitration's confidentiality order is no different than an Order by this Honorable Court placing documents under seal.   That order cannot be undone simply by consent

of the parties.  MTN is requesting this Court to step into the shoes of the ICC tribunal and rule on confidential documents and the applicability of a procedural order in that arbitration – a request that is improperly placed before this Court.

The request to expedite is based on a non-existent emergency; MTN raised this over one month ago and knew Turkcell's position.  MTN has failed its burden to show why this Court should entertain such a last-minute motion for an order to "show cause."  It has provided no precedent for early discovery to use in a factual dispute over an affirmative defense at this stage. This is because such a request inherently would drag both parties into intense early discovery simply not appropriate for the Motion to Dismiss, which will be analyzed on the pleadings.

WHEREFORE, for the reasons stated above, Turkcell respectfully requests this Honorable Court:

(a)     Deny MTN's Motion for an Order to Show Cause;

(b)     Grant Turkcell costs, including reasonable attorneys' fees, associated with opposing MTN's Motion; and

(c)     Award Turkcell all other relief the Court deems just and proper.


Respectfully submitted,

/s/ Read K. McCaffrey

Read K. McCaffrey, Esq. (# 413837)
David J. Farber, Esq. (# 415899)
Kristen M. Jarvis Johnson, Esq. (# 985032)
PATTON BOGGS LLP
2550 M Street, NW, Washington, DC  20037
Phone:  (202) 457-6000 | Fax:  (202) 457-6315
rmccaffrey@pattonboggs.com
dfarber@pattonboggs.com
kmjohnson@pattonboggs.com
*Counsel for Plaintiffs*

Date:  May 29, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Plaintiffs' Opposition to Defendants' Motion for an Order to Show Cause as to Why This Court Should Not Compel Turkcell to Consent and for an Order to Expedite with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system on May 29, 2012, pursuant to Local Rule 5.4(d) of the Rules of the United States District Court of the District of Columbia, with electronic service to:

>
> Timothy Coleman, Esq.
> Mia Havel, Esq.
> FRESHFIELDS BRUCKHAUS DERINGER US LLP
> 701 Pennsylvania Ave. NW, Suite 600
> Washington, DC 20004-2692
> tim.coleman@freshfields.com
> mia.havel@freshfields.com
>
> Pamila Gudkov, Esq.
> Timothy Harkness, Esq.
> FRESHFIELDS BRUCKHAUS DERINGER US LLP
> 600 Lexington Ave.
> New York, NY 10022
> mila.gudkov@freshfields.com
> timothy.harkness@freshfields.com
>
> *Counsel for Defendants*
>
> /s/ Read K. McCaffrey