# Exhibit B

 

DLA Piper UK LLP
3 Noble Street
London
EC2V 7EE
United Kingdom
DX 33866 Finsbury Square
T +44 20 7796 6879
F +44 20 7796 6994
W www.dlapiper.com

Mr Sifiso Dabengwa                              Your reference
MTN Group President and CEO
MTN Head Office                                  Our reference
14th Avenue
Johannesburg                                         RJM/cad/328163/6
2196                                                 UKM/36631816.1
SOUTH AFRICA

16 June 2011

By Courier

Dear Sir

**CLAIM BY TURKCELL**

**Introduction**

1. We are instructed by Turkcell İletişim Hizmetleri A.Ş. ("Turkcell"), and its wholly owned subsidiary, East Asian Consortium B.V. ("EAC"), (collectively "Turkcell"), in respect of a very substantial claim against MTN International (Mauritius) Limited ("MTN").

**The claim**

2. The essence of the claim is that MTN unlawfully interfered with Turkcell's contractual entitlement to participate in a second mobile telephone licence in Iran (the "licence") awarded to Turkcell and the other members of a consortium (known as the Irancell Consortium), which was announced the winner of a public tender for the licence in February 2004 (the "tender"). MTN effectively conspired with IEDC, one of Turkcell's local partners in the Irancell Consortium, to use unlawful means against Turkcell, which had the effect of deliberately engineering Turkcell out of its contractual entitlement to participate in the licence in favour of MTN, for political and financial reasons.

3. As a consequence of its unlawful conduct, MTN knowingly caused Turkcell enormous financial loss, principally by depriving Turkcell of the profit that it would otherwise have earned from the operation of the licence over, at the very least, its initial 15 year term.

4. The extent of Turkcell's losses is highlighted by the fact that, having been so instrumental in orchestrating Turkcell's removal, MTN then effectively implemented Turkcell's business plan to its very considerable financial advantage. MTN's mobile telephone operations in Iran are now the second largest in that country, having attracted more than 35 million subscribers since MTN first began to operate the licence there in October 2006. Compensation payable by MTN is thus very significant indeed.

DLA Piper UK LLP is regulated by the Solicitors Regulation Authority.

DLA Piper UK LLP is a limited liability partnership registered in England and Wales (number OC307847) which is part of DLA Piper, a global law firm, operating through various separate and distinct legal entities.

A list of members is open for inspection at its registered office and principal place of business, 3 Noble Street, London, EC2V 7EE and at the address at the top of this letter. Partner denotes member of a limited liability partnership.

A list of offices and regulatory information can be found at www.dlapiper.com.

UK switchboard
+44 (0)8700 111 111



INVESTOR IN PEOPLE



RJM/cad/328163/
UKM/36631816-
Continuation
16 June 201

**The wrongdoing (tortious actions)**

5. Having succeeded in the tender, Turkcell became contractually entitled to participate in the licence (the "licence contract"). Turkcell had offered the most attractive business plan and financial incentives. MTN's offer had been rejected.

6. MTN did not reconcile itself to losing the tender. Against the backdrop of political change in Iran in 2004, MTN devised a series of steps, with the apparent objective of engineering Turkcell out of the licence contract. Through the combination of MTN's efforts and those of IEDC in particular, MTN played a pivotal role in the steps taken by the Iranian authorities effectively to cancel the licence contract without lawful justification, and thus unlawfully deprive Turkcell of its contractual entitlement to participate in the licence, along with the substantial financial and other benefits that went with it.

7. From information that has recently and reliably come to the knowledge of Turkcell, it would appear that MTN sought to achieve its ultimate objective of engineering Turkcell out of the licence contract by enlisting South African Government support for the provision of military equipment to, and other defence co-operative arrangements with, Iran. Subsequently it appears that the ongoing relationship between the respective governments developed further, as illustrated by the favourable position taken by the South African delegation towards Iran's nuclear programme at the meeting of the International Atomic Energy Agency in Vienna on 24 November 2005. Three days later, the licence was formally issued by the Iranian authorities to MTN and IEDC.

8. By these deliberately contrived means, MTN endeared itself to key decision makers in the Iranian administration, especially within the Ministry of Defence. As a consequence, MTN was able, with the assistance of IEDC, to position itself as the replacement for Turkcell in the pre-conceived plan to remove Turkcell from its contractual entitlement to participate in the licence. IEDC was a key collaborator with MTN in this unlawful enterprise, and, as part of the plan, MTN incentivised IEDC by paying double what MTN's equity interest in the licence would have otherwise dictated once Turkcell was successfully eliminated. Thus, by way of example, MTN paid to the Iranian Ministry of Communications and Information Technology the entirety of IEDC's liability for the up front licence fee, an amount equivalent to more than €150 million.

9. The fact that MTN was determined to ensure Turkcell's removal from the licence is revealingly illustrated by MTN's code name for the project which was "Project Snooker". We understand that this term was deliberately chosen by MTN, as it very aptly captured MTN's intention to manoeuvre (snooker) Turkcell out of the licence altogether. It has also been made very plain to us that the attempt by MTN and the Iranian authorities at the time to convey to the outside world that Turkcell was the author of its own misfortune was nothing more than a "charade", designed to give the impression that Turkcell was being treated fairly, when in truth the hidden agenda (as unlawfully



RJW/cad/328183/
UKM/36631616.
Continuation
16 June 201

implemented by MTN and IEDC in particular) was to replace Turkcell with MTN for politically and financially motivated reasons.

10. MTN was fully aware that the series of events which it had designed and carried through, and which played such an instrumental part in Turkcell's unlawful demise, exposed MTN and IEDC to a considerable litigation risk. As a further incentive to IEDC, MTN was willing to indemnify IEDC for any claims made against it by Turkcell arising out of MTN's unlawful conduct.

**Damages**

11. MTN fully appreciated that its part in the pre-determined plan of deception, and the deliberate engineering of Turkcell out of its contractual entitlement to participate in the licence, would cause Turkcell grave financial loss. The damages actually sustained by Turkcell, including lost profits and substantial incurred expenditure, continue to be the subject of ongoing investigation. They are not less than US$ 600 million. Turkcell is determined that MTN should be held responsible, in full, for the enormity of the damage that it deliberately and unlawfully inflicted on Turkcell

12. Turkcell appreciates that, once filed, the details of Turkcell's claim will have serious ramifications at the international level, and inevitably generate widespread adverse publicity for MTN. Turkcell therefore invites you or MTN to engage with it in immediate discussions at senior management level.

13. We are instructed that if a mutually acceptable date and venue for such discussions has not been agreed with you or MTN by 30 June 2011, we are to pursue Turkcell's claim against MTN vigorously by all available means.

14. In this connection, we reserve the right to commence legal proceedings against MTN before a competent court in the appropriate jurisdiction (including the United States) without further notice, and to make whatever disclosures to the relevant regulatory authorities, including stock exchanges, as may be necessary.

Yours faithfully

*DLA Piper UK LLP,*

**DLA PIPER UK LLP**